Filed 7/30/26

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| STEPHEN GLICK et al., | B334953 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 20STCV00320) |
| v. | |
| CITY OF LOS ANGELES, | |
| Defendant and Appellant. | |


APPEALS from an order and judgment of the Superior Court of Los Angeles County, Michael P. Linfield, Judge. Order granting new trial reversed; judgment reinstated and affirmed.

McNicholas & McNicholas, Matthew S. McNicholas, Douglas D. Winter, Jason L. Oliver; Esner, Chang, Boyer & Murphy, Stuart B. Esner and Rowena J. Dizon for Plaintiffs and Appellants.

Hydee Feldstein Soto, City Attorney, Denise C. Mills, Chief Deputy City Attorney, Kathleen A. Kenealy, Chief Assistant City Attorney, Shaun Dabby Jacobs, Assistant City Attorney, and Sara Ugaz, Deputy City Attorney, for Defendant and Appellant.

_____

A jury found in favor of Stephen Glick (Glick) and Alfred Garcia (Garcia) (collectively, plaintiffs) on their claims for gender discrimination and retaliation against the City of Los Angeles (City). The jury awarded Glick $8,621,358 in damages and Garcia $4.5 million, and the trial court entered judgment in that amount. The court later conditionally granted the City's new trial motion unless Glick agreed to a remittitur reducing his damages to $250,000 and Garcia agreed to reduce his damages to $125,000. Plaintiffs rejected the reduced awards. Plaintiffs and the City both appealed.

We reverse the order granting a new trial on damages. The trial court abused its discretion by capping the amount of damages a jury can award for so-called "garden-variety emotional distress." The court also abused its discretion by erroneously rejecting as inadmissible Glick's own testimony about his future economic damages. Because the jury's damages awards were not excessive as a matter of law or unsupported by the evidence, we reinstate the judgment and affirm it.

## BACKGROUND

### I. Facts

Plaintiffs are Los Angeles Police Department (LAPD) officers. On January 26, 2017, Garcia and his partner, Camille Spitaleri (Spitaleri), arrested Raul C. (Raul)[1] for driving under

---

[1]     Per California Rules of Court, rule 8.90(b)(10), we initially refer to Raul by his first name and last initial, and thereafter by his first name. No disrespect is intended.

2

the influence after he struck a child with his car.  Glick and his partner, Amanda Orefice (Orefice), responded to the scene and transported Raul to the police station.

Plaintiffs and Orefice escorted Raul into the station and secured him in a holding cell.  Glick and Orefice then resumed their patrol duties.  Garcia and Spitaleri remained at the station, where they worked on their arrest report and conducted periodic welfare checks on Raul.  During one of these checks, Garcia used his personal cell phone to take a picture of Raul laying on the floor in his own vomit.  At some point it was determined that Raul needed medical attention.  Paramedics took Raul to the hospital, where he was intubated and treated for acute alcohol poisoning.

Raul filed a complaint alleging that unknown officers shaved off his eyebrows, shaved his mustache to look like Adolf Hitler's, and drew a penis and wrote the word "puto" on his abdomen with a marker (the battery).

LAPD's Internal Affairs department (Internal Affairs) conducted a "major investigation" into Raul's allegations. Internal Affairs obtained a search warrant for the cellular telephone records of plaintiffs, their partners, and two paramedics.  A second search warrant was obtained to seize plaintiffs' cellular telephones but not those belonging to their partners.  Internal Affairs also searched plaintiffs' lockers and police and personal vehicles.  Internal Affairs later served search warrants on plaintiffs' partners to seize their cellular telephones but did not search their lockers or cars.

Plaintiffs were "benched," meaning that they were removed from field duties and assigned to work at the front desk of the

3

station. Their partners, Orefice and Spitaleri, remained in the field.

Because Internal Affairs was unable to identify who committed the battery on Raul, the commanding officer recommended that those allegations be adjudicated as "not resolved." As for the failure to request medical attention for Raul in a timely matter, the commanding officer recommended that Garcia be suspended for three days and that Glick, Spitaleri, and Orefice receive official reprimands. LAPD's deputy chief later recommended increasing Garcia's suspension to 10 days.

The chief of police, however, rejected the disciplinary recommendations. Instead, the chief relieved plaintiffs from duty pending a hearing before the Board of Rights to terminate their employment. While awaiting the hearing, plaintiffs were required to stay at their homes unless they received approval to leave.

The chief of police later canceled the Board of Rights hearing and adjudicated the battery counts against plaintiffs as "not resolved." The chief officially reprimanded plaintiffs for failing to get Raul medical treatment.

When a police union representative complained to a high-ranking LAPD official about the disparate treatment between plaintiffs, who are male, and their partners, who are female, he was told that " 'this is something guys would do, not females.' "

## II. Procedural History

Plaintiffs filed a complaint against the City asserting causes of action under the Fair Employment and Housing Act (Gov. Code, § 12940 et seq.) for gender discrimination and retaliation. Plaintiffs stipulated that they were making "no claim . . . for mental and emotional distress over and above that

4

usually associated with the physical injuries claimed" and that "no expert testimony regarding this usual mental and emotional distress [would] be presented at trial in support of the claim for damages." (Code Civ. Proc., § 2032.320, subd. (c)(1) & (2).)

The case proceeded to trial, and the jury found in favor of plaintiffs—and against the City—on both causes of action. The jury awarded Glick $5 million in past noneconomic damages, $3 million in future noneconomic damages, and $621,358 in future economic damages. The jury awarded Garcia $3 million in past noneconomic damages and $1.5 million in future noneconomic damages.

Judgment was entered on September 20, 2023.

The City then filed a motion for new trial, arguing that the noneconomic damages were "plainly excessive." The City expressly disavowed any challenge to the jury's economic damages award to Glick. In a tentative ruling, the trial court indicated that it was inclined to grant the new trial motion and significantly reduce the noneconomic damages awards and to eliminate Glick's economic damages. The court permitted the parties to file supplemental briefs regarding economic damages.

The trial court subsequently granted the City's new trial motion, conditionally ordering a new trial on damages unless Glick consented to reduce his total damages award from $8,621,358 to $250,000 and Garcia consented to reduce his total damages award from $4.5 million to $125,000.

The trial court reasoned that plaintiffs had "only sought and argued for garden-variety emotional distress" and characterized the evidence supporting the noneconomic damages as "scant." The court noted the absence of any testimony from "psychologists, psychiatrists, or treating physicians." The court

5

concluded that the jury "clearly should have reached a different verdict[,]" because the evidence was insufficient to support such large awards. The court denied "making a hard-and-fast rule as to the maximum amount that can be awarded for garden-variety emotional distress" but then stated that "[a] mid- to high-seven figure award for emotional distress [was] far 'above and beyond that usually associated' with the discrimination and retaliation" suffered in this case.

The trial court exercised its independent judgment to reduce Glick's noneconomic damages to $250,000 ($200,000 for past and $50,000 for future). The court believed even this amount was too high, stating: "Given the circumstances of this case, the [c]ourt would consider an award to . . . Glick of $250,000 in noneconomic damages to be too high. However, had the [j]ury awarded garden-variety emotional distress damages for . . . Glick in the amount of $250,000, the [c]ourt would not have issued a remittitur. Therefore, the [c]ourt issues a conditional order granting a new trial unless . . . Glick consents to a reduction in emotional distress damages to $250,000." The court reduced Garcia's noneconomic damages to $125,000 ($100,000 for past and $25,000 for future).

The trial court admitted the difficulty and imprecision of this calculation, which it attributed to the lack of an expert "to ascertain what is the appropriate range of damages[.]" The court also reasoned that "when a stipulation has been made pursuant to Code of Civil Procedure section 2032.320[, subdivision (c),] 'that no claim is being made for mental and emotional distress over and above that usually associated with the physical injuries claimed[,]'[] the damages claimed rarely exceed a low five-figure range." The court explained that in its own "experience, only the

most extraordinary claims for garden-variety emotional distress can reach a very low six-figure range."

The trial court reduced Glick's economic damages to $0 on the ground that, notwithstanding Glick's own testimony, "there was no admissible evidence submitted at trial that would support a finding of any economic damages."  The court characterized Glick's testimony "that he planned to retire early" as "completely speculative and thus inadmissible."  The court also expressed concern about "the potential for a windfall" and "the potential for a double recovery" if the economic damages award stood.

Plaintiffs rejected the reduced awards and appealed from the order granting a new trial.  The City filed a protective cross-appeal from the September 20, 2023, judgment.

## DISCUSSION

### I.  Plaintiffs' Appeal

Plaintiffs argue that the trial court abused its discretion by granting a new trial on damages.  We agree.

#### A.  *Relevant law and standard of review*

A trial court may vacate a jury verdict and order a new trial based on, as relevant here, "[e]xcessive or inadequate damages" (Code Civ. Proc., § 657, subd. (5)) or "[i]nsufficiency of the evidence to justify the verdict" (*id.*, subd. (6)).  A new trial may not be granted on these grounds, however, "unless after weighing the evidence the court is convinced from the entire record, including reasonable inferences therefrom, that the court or jury clearly should have reached a different verdict or decision."  (Code Civ. Proc., § 657.)

When a new trial limited to damages is granted based on excessive damages, the trial court has the discretion to "issue a

7

conditional order granting the new trial unless the party in whose favor the verdict has been rendered consents to the reduction of so much thereof as the court in its independent judgment determines from the evidence to be fair and reasonable." (Code Civ. Proc., § 662.5, subd. (a)(2).)

In reviewing an order granting a new trial based on insufficiency of the evidence or excessive damages, the appellate court "conclusively presume[s] that [the] order . . . was made only for the reasons specified" therein. (Code Civ. Proc., § 657.) "[W]hen a trial court grants a new trial on the issue of excessive damages, whether or not the order is conditioned by a demand for reduction, 'the presumption of correctness normally accorded on appeal to the jury's verdict is replaced by a presumption in favor of the order.' [Citations.] [¶] We review the trial court's use of its power of remittitur to reduce excessive damages for abuse of discretion. [Citations.]" (*Pearl v. City of Los Angeles* (2019) 36 Cal.App.5th 475, 486.)

"An appellate court may reverse a trial court decision for abuse of discretion where the exercise of that discretion is not based upon the applicable law. 'Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion.' [Citation.]" (*Toshiba America Electronic Components v. Superior Court* (2004) 124 Cal.App.4th 762, 768 (*Toshiba*); see also *People v. Thomas* (2023) 14 Cal.5th 327, 399 [" 'A court abuses its discretion if it acts "in an arbitrary, capricious, or patently absurd manner" ' [citation] or 'when its ruling "falls outside the bounds of reason" ' [citation]"].)

**B.** *Plaintiffs' noneconomic damages*

"Noneconomic damages compensate an injured plaintiff for nonpecuniary injuries, including pain and suffering. Pain and suffering is a unitary concept that encompasses physical pain and various forms of mental anguish and emotional distress. [Citation.] Such injuries are subjective, and the determination of the amount of damages by the trier of fact is equally subjective. [Citation.] There is no fixed standard to determine the amount of noneconomic damages. Instead, the determination is committed to the discretion of the trier of fact. [Citations.]" (*Corenbaum v. Lampkin* (2013) 215 Cal.App.4th 1308, 1332, fn. omitted (*Corenbaum*).)

The trial court found insufficient evidence to support the jury's noneconomic damages awards, labeling the evidence presented by plaintiffs as "scant." This characterization, however, was belied by the court's own summary of the evidence.

As the trial court recounted, regarding past noneconomic damages, "Glick testified: (1) that he was upset during the investigation into the battery and the enforcement actions taken against him, including being upset and crying when he was notified of the Board of Rights hearing against him; (2) that these stresses were ongoing, to the point where he had a hard time rolling out of bed; (3) that he was stressed out at this time because he had just become a first-time father and did not know how he was going to financially support his family; (4) that he was upset because he was concerned that he would not be able to transfer into the Metro Division and continue his upward career trajectory with the LAPD; and (5) that the events stemming from the investigation and enforcement actions contributed to a recurrence of his drinking alcohol, which at one point (several

9

years later) led to him calling an LAPD helpline." Regarding future noneconomic damages, "[a]mong other things, [Glick] testified: (1) that he has an ongoing problem with alcoholism, which was made worse by what has occurred; (2) that he does not trust the LAPD the way he used to; (3) that he does not enjoy his job the way he used to; and (4) that he feels that this tore his family apart."

According to the trial court, as to past and future noneconomic damages, "Garcia testified: (1) that he felt embarrassed by being benched for eight or nine months, particularly since this was the only time he had ever been benched; (2) that he was shocked when he received notice of the Board of Rights hearing; (3) that he did not allow himself to be down on himself for too long, as he had to take care of his family financially; (4) that within a week of being sent home, he was working an off-duty security job; (5) that this was the lowest point in his entire career; (6) that he felt hurt by the LAPD's actions toward him, particularly because he had been loyal to the LAPD and given them his life (including being in witness protection as a gang expert); (7) that his wife was deeply upset by the situation, and that her emotions in turn affected him; (8) that he never told his daughters about what occurred because he wanted to remain a role model to them; and (9) that he was able to stop his transfer to another station because he wanted to keep working at the station he was at."

The trial court did not conclude that any of this testimony was inherently improbable or otherwise lacked credibility. Rather, the court deemed it insufficient because it showed "garden-variety emotional harms" and was uncorroborated by testimony from "any psychologists, psychiatrists, or treating

10

physicians." But expert testimony is not required where, as here, "[t]he emotional distress to which [a plaintiff] testifie[s] is not beyond the common experience of the jurors." (*Knutson v. Foster* (2018) 25 Cal.App.5th 1075, 1097; see also *Campbell v. General Motors Corp.* (1982) 32 Cal.3d 112, 124 [" 'the decisive consideration in determining the [necessity] of expert opinion evidence is whether the subject of inquiry is one of such common knowledge that [persons] of ordinary education could reach a conclusion as intelligently as the witness or whether, on the other hand, the matter is sufficiently beyond common experience that the opinion of an expert [is required]' "].)

The trial court also erred by intimating that a discovery stipulation under Code of Civil Procedure section 2032.320 serves as a limit on the *amount* a plaintiff can recover for emotional distress and arbitrarily capping damages in cases where such a stipulation has been made as "rarely exceed[ing] a low five-figure range."[2]

Finally, notwithstanding its claim to the contrary, the trial court erroneously placed a limit on the amount of damages a jury can award for emotional distress damages. The trial court noted

---

[2]     Under Code of Civil Procedure section 2032.320, a trial court may "not order a mental examination of a person for whose personal injuries a recovery is being sought except on a showing of exceptional circumstances" if the person stipulates "that no claim is being made for mental and emotional distress over and above that usually associated with the physical injuries claimed" and "that no expert testimony regarding this usual mental and emotional distress will be presented at trial in support of the claim for damages." (Code Civ. Proc., § 2032.320, subds. (b) & (c)(1)-(2).)

11

that "*only* the most extraordinary claims for garden-variety emotional distress can reach a very low six-figure range" (italics added), which effectively caps damages and means that no plaintiff could receive a mid-to-high six-figure amount or any seven-figure amount or higher for "garden-variety emotional distress." The court's reasoning is incompatible with case law's rejection of a "fixed standard to determine the amount of noneconomic damages." (*Corenbaum*, *supra*, 215 Cal.App.4th at p. 1332.)

Under these circumstances, the trial court abused its discretion by granting the motion for new trial on damages based on insufficiency of the evidence, unless plaintiffs accepted an extreme and arbitrary reduction of their noneconomic damages.

### C. *Glick's economic damages*

Assuming without deciding that the trial court had the statutory authority to grant a new trial as to Glick's economic damages, we conclude that doing so was an abuse of discretion.[3]

The jury was instructed that Glick claimed "future lost earnings" as economic damages and that, to recover such damages, Glick was required to "prove the amount of income, earnings, salary, and wages that he w[ould] be reasonably certain to lose in the future as a result of the injury." (See also Civ. Code, § 3283 ["Damages may be awarded, in a judicial proceeding, for detriment resulting after the commencement thereof, or certain to result in the future"].)

The trial court's stated reason for reducing the jury's economic damages award from $621,358 to $0 was that no

---

[3] We need not address the parties' arguments concerning the trial court's compliance with Code of Civil Procedure section 659a.

12

supporting "admissible evidence" had been presented at trial. The court was mistaken.

Glick testified that the City's actions "cut [his] career short[.]" Instead of his original plan to retire at 55 years old, he now planned to retire at age 50, which was the earliest that he could collect his pension to provide for his family. The court characterized this testimony as "completely speculative and thus inadmissible" because "without any supporting evidence of a diminished future capacity to work because of what happened in this case, it is pure speculation whether someone who is 43 years old and says that they will retire in seven years . . . will actually do what they say."

The trial court confused the admissibility of evidence with its credibility. (See *Yates v. Smith* (1871) 40 Cal. 662, 669 ["The question of the admissibility of evidence is quite different from the question of its value, weight or effect"].) Glick was competent to testify about his past retirement plans and how the City's actions affected those plans. (See *People v. Valencia* (2021) 11 Cal.5th 818, 837 ["any witness, whether lay or expert, may testify to facts within their personal knowledge, so long as those facts are relevant"].) That Glick could change his mind about when to retire and possibly receive "a windfall" or "double recovery" did not render his testimony inadmissible.

The jury clearly believed Glick's (admissible) testimony. Without resorting to speculation, the jury could find that Glick was reasonably certain to retire at age 50, and award him $621,358 based on the expert testimony of a forensic economist, who opined that Glick's future loss of earnings would be $621,358 if he retired at 50 instead of 55.

13

In basing its decision on the purported lack of admissible evidence, the trial court " 'transgresse[d] the confines of the applicable principles of law' " and, thus, abused its discretion. (*Toshiba, supra,* 124 Cal.App.4th at p. 768.)

## II. The City's Appeal

The City contends that, if we reverse the trial court's order granting a new trial on damages, we should nevertheless significantly reduce plaintiffs' noneconomic damages and eliminate Glick's economic damages. We disagree.

### A. *Plaintiffs' noneconomic damages*

"Determining the amount of money a plaintiff is to be awarded as compensation for noneconomic injuries is '[o]ne of the most difficult tasks imposed on a fact finder' " and "is ' "a matter on which there legitimately may be a wide difference of opinion." ' " (*Burchell v. Faculty Physicians & Surgeons etc.* (2020) 54 Cal.App.5th 515, 527 (*Burchell*).)

"Appellate review of the jury's determination of noneconomic damages is ' "very narrow." ' [Citations.]" (*Phipps v. Copeland Corp. LLC* (2021) 64 Cal.App.5th 319, 343.) "We typically defer to the jury's discretion 'in the absence of some other factor in the record, such as inflammatory evidence, misleading instructions or improper argument by counsel, that would suggest the jury relied upon improper considerations.' [Citation.]" (*Soto v. BorgWarner Morse TEC Inc.* (2015) 239 Cal.App.4th 165, 199 (*Soto*).) "The jury 'is entrusted with vast discretion in determining the amount of damages to be awarded,' and a reviewing court will reverse or reduce the award only ' " 'where the recovery is so grossly disproportionate as to raise a presumption that it is the result of passion or prejudice . . . .' " [Citations.]' [Citation.]" (*Bender v. County of*

*Los Angeles* (2013) 217 Cal.App.4th 968, 985; see also *Seffert v. Los Angeles Transit Lines* (1961) 56 Cal.2d 498, 507–508.)

The City points to no " 'inflammatory evidence, misleading instructions or improper argument by counsel' " (*Soto, supra*, 239 Cal.App.4th at p. 199) that may have influenced the jury's verdict. Rather, the City argues that the noneconomic damages were so large that they shock the conscience and create an inference of "the existence of passion and prejudice."

We are unconvinced that the noneconomic damages awarded here shock the conscience and require reduction.

Glick testified that the City's discrimination and retaliation "was probably the single-most difficult thing [he] ha[d] ever gone through in [his] entire life." When "[a]ll [his] dreams [were] coming true[,]" "it crushed [his] career goals" and "tore [his] family apart." He relapsed into alcoholism. Glick testified that "[i]t was very, very difficult . . . for years after." Garcia testified that he "tried to maintain some kind of toughness and tried to maintain [his] emotions." Garcia's wife, however, "took it pretty hard[,]" which in turn affected him. Garcia "never told [his] daughters[,]" as he "wanted to maintain that role model of being a police officer with them and didn't want them to feel like [he] was in any kind of trouble."

"[E]ntrusted with vast discretion in determining the amount of damages to be awarded" (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 64), the jury was entitled to believe plaintiffs' testimony, make reasonable inferences from it, and award Glick $8 million and Garcia $4.5 million in noneconomic damages. We will not find the jury's award " 'excessive as a matter of law simply because it exceeds the amount awarded in

15

other cases.' [Citation.]" (*Burchell*, *supra*, 54 Cal.App.5th at p. 528.)

## B.  *Glick's economic damages*

The City urges us to uphold the trial court's elimination of Glick's economic damages on the ground that "[s]ince no admissible evidence—let alone substantial evidence—shows that Glick was reasonably certain to suffer any future economic loss, the trial court could have found such damages are nonrecoverable as a matter of law and granted a [judgment notwithstanding the verdict] motion on the issue."

We reject this argument.  As we have already discussed, Glick's testimony that he had changed his retirement plans because of the City's actions was admissible.  This evidence, coupled with the expert testimony of the forensic economist on Glick's future loss of earnings, constitutes substantial evidence supporting the jury's award of $621,358 for future economic damages.

## DISPOSITION

The order granting the City's motion for new trial is reversed.  The underlying September 20, 2023, judgment is reinstated and affirmed.  Plaintiffs are entitled to their costs on appeal.

CERTIFIED FOR PUBLICATION.


GOORVITCH, J.

We concur:


CHAVEZ, Acting P. J.


RICHARDSON, J.

17